4-4041 and 4042

Opinion delivered November 11, 1935.

*King, Mahaffey, Wheeler & Bryson,* for appellant.
*Carrigan & Monroe,* for appellees.

SMITH, J. The appellees in this case have recovered judgments for a second time against appellant for damages to compensate injuries and suffering occasioned them by eating tainted and impure food which it was alleged appellant had negligently sold. The first judgments in which damages were recovered were reversed in an opinion appearing in 189 Ark. 1037 *et seq.,* 76 S. W. (2d) 65. The testimony offered at the first trial is fully recited in the former opinion, and we said it was insufficient to support the verdicts because its effect was to show only that the plaintiffs were made sick by eating cheese which had been purchased from appellant without showing that appellant was guilty of negligence in making the sale. The cases had been tried upon the

theory that the cheese which the plaintiffs ate and which made them sick had been kept in a display case which also contained tainted meats, and that the cheese had been contaminated by the meats. After an extensive review of the testimony, we said that, while this might have been true, the testimony failed to establish that fact, and that it was only by speculation and conjecture that this conclusion could be reached. The judgments were therefore reversed because of the insufficiency of the testimony to support the verdicts, and the cases were remanded for a new trial. Upon the remand and retrial of the causes, there were again verdicts and judgments in favor of the plaintiffs, from which is this appeal.

It is insisted, for the reversal of these second judgments, that the testimony is substantially identical with that which on the former appeal was held insufficient. But we do not think so. The missing link in the testimony was supplied by a witness, Robert Watson, who did not testify at the former trial. A vigorous assault is made upon the credibility of this witness; but this was, of course, a question for the jury.

This witness testified that at about six o'clock on the Saturday evening before the cheese which poisoned the appellees was purchased the following Monday morning he purchased a piece of bologna sausage, which was cut from a stick of sausage lying against the cheese in the glass display case in appellant's store and meat market. The witness ate a portion of this sausage on Saturday evening before the cheese was sold at noon the following Monday, and was made sick by eating it. The witness had the butcher who made the sale slice the sausage, so that he would not have to slice it at home, and this was done with a knife inside the case. The testimony shows that this knife was used in selling both the cheese and the sausage. Witness returned the sausage early the following Monday morning, and told the butcher who had made the sale that it was spoiled. The butcher gave witness a piece of meat for the spoiled sausage, and remarked as he did so, "Most any meat will spoil in time behind the counter."

Upon this testimony, and the other testimony in the case which the former opinion recites, the court permitted Dr. Martindale to answer the following hypothetical question: "Q. State whether or not if these children had eaten a piece of cheese, and that piece of cheese it developed had come in contact with a piece of spoiled or contaminated bologna sausage, or laid by a piece of contaminated bologna sausage, and these children were poisoned after eating that cheese, and that was all they had eaten, the cheese was what in your opinion caused that condition?"

To this question objection was made that there was no testimony to prove the hypothesis. Over appellant's objection and exception the doctor was permitted to answer as follows: "A. I would like to say that anything that was contaminated with ptomaine poison in a glass case, or a wooden case, or anywhere confined, would contaminate everything in there."

Other questions and answers admitted over the appellant's objections and exceptions were as follows: "Q. I want to ask you if a piece of cheese in itself—if it will contaminate or become poison without coming in contact with some other poison? A. Well, it's not likely to. I don't know that I have ever known ptomaine poison from cheese unless it had come in contact with flesh or some kind of meat. Q. Well, will contamination appear in bologna sausage? A. Oh, yes. Any kind of meat. I don't think of anything more apt to do it than bologna sausage, unless it was just ordinary pork sausage or beef sausage."

We think, in view of the testimony recited in the former opinion and the additional opinion recited in this opinion, that there was sufficient testimony to prove the hypothesis, and the objection was not therefore well taken.

No complaint is made of the instructions under which the cases were submitted to the jury. Indeed, the former opinion is the law of the case, and we have concluded, under the law as there declared, that the testimony in its entirety is sufficient to support the finding

that appellant's salesman was negligent in selling the cheese which made appellees sick.

The judgments must therefore be affirmed, and it is so ordered.